Charles Atkins, d/b/a Atkins Ford Sales, defendant below, appeals from judgment entered on a verdict against him.
The plaintiff, Mark Drake, alleged that Atkins, owner of a commercial truck dealership, had sold him a used truck, which Atkins knew at the time of sale to be used, but had represented to him that the truck was new and not damaged. Drake claimed he bargained and paid for a new truck.
Drake filed this suit and sought compensatory and punitive damages for fraud, misrepresentation, deceit, breach of warranty, and violation of 15 U.S.C. § 1988 and 1989 (1982) (mileage disclosure and odometer requirements). After a full trial on the merits, the jury returned a verdict of guilty on *Page 470 
the charges of fraud and violation of the federal odometer statute. It awarded Drake $1,500.00 compensatory damages and $15,000.00 punitive damages.
There are two issues before us: (1) Did the trial court err in admitting an out-of-court statement alleged to have been made by an agent of Atkins, without first requiring proof of agency? (2) Were statements made by plaintiff's counsel during closing arguments so improper and prejudicial as to require a mistrial?
The testimony which Atkins claims is inadmissible hearsay came out on the direct examination of Drake. The pertinent portions are as follows:
 "[MR. DRAKE]: . . . And, then, Ken Moore and I believe it was C.W. Wallace, went inside and an older man came outside and me and a friend of mine was standing there talking about it, and he come out with —
 "[MR. SALTER]: The man that came out, did he work with Atkins Ford Sales at that time?
"[MR. DRAKE]: Yes sir.
 "MR. JACKSON [Counsel for Atkins]: I object to that unless he knows.
"COURT: Do you know, in your judgment?
 "[MR. DRAKE]: In my judgment and opinion, I saw him up there several times that I had been up there and as I was standing —
"COURT: He appeared to work there?
"[MR. DRAKE]: He appeared to work there.
 "MR. JACKSON: Judge, Mr. Atkins, I represent to the Court, has a lot of people to come up there and stay from time to time. And they don't work there, and I don't know who he is talking about, and unless he knows this man works there, and whatever this man told him is not binding upon Atkins Ford.
 "COURT: I understand, and you can clear that up on cross.
 "MR. JACKSON: Judge, if he goes ahead and says it, you can't erase that from the jury's mind. There is no way to do that.
"COURT: You can show how ridiculous it might be.
"MR. JACKSON: I need to do that before he says it.
"COURT: Overruled.
". . .
 "[MR. DRAKE]: This gentleman came out that I supposed worked at Atkins Ford.
 "MR. JACKSON: All right, I move to exclude that. He says `he supposed.'
"COURT: Overruled.
 "[MR. DRAKE]: He came out and a friend and I were sitting there talking about what he had just got through telling me about fixing the scratches and all. He walked out to us and he said, `Look,' he said, `If you are worried about the scratches in the bed of your truck and the side of your truck,' he said, `There is nothing to worry about.' He said, `What happened was they took the truck. They had to haul some tin in it.' He said they had to haul some tin in it."
The scope of review is stated in Rule 45 of the Alabama Rules of Appellate Procedure:
 "No judgment may be reversed or set aside, nor new trial granted in any civil . . . case on the ground of . . . improper admission or rejection of evidence . . . unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties."
The witness simply said that a man who appeared to work at the dealership attempted to explain how the truck came to be scratched. The statement in question is relevant to the jury's determination of whether the truck was in fact used and damaged at the time of sale and whether the dealership had knowledge of this. We think the trial court correctly held that Atkins could show by cross-examination that the plaintiff was relying on a statement of a bystander. We also note that *Page 471 
this evidence was cumulative. Plaintiff's witness, Terry Martin, testified to the same thing, without objection.
There was additional evidence to support the jury's finding that the truck was not new and that Atkins misrepresented its condition to Drake. Drake testified that, two days after the sale and delivery of the truck, he found the underside and a portion of the interior of the truck to be covered with mud, and found a bent stabilizer bar, patches of rust on the trailer hitch and brake pedal, a dirty air filter, and particles in the oil. He testified that he had not driven the truck through any mud or been in any accident in which the front of the truck had been struck during those two days. These facts were corroborated by testimony of an acquaintance of Drake's.
We hold, without deciding whether the statement is inadmissible hearsay or not, that it was not reversible error for the trial court to admit the evidence in the context involved here. The question of agency was properly presented to the jury under a correct charge. There was sufficient evidence from which the jury could have concluded that the person making the statement complained of was a salesman for Atkins. The plaintiff and his friend both testified that they had seen him there several times, and he appeared to work there. He certainly had apparent authority. Blue Cross-Blue Shield ofAla. v. Thornton, 56 Ala. App. 678, 325 So.2d 187 (1975).
The statements of Drake's counsel, made during closing argument, which are claimed to be improper and prejudicial so as to require a mistrial, are set out below:
 "MR. SPINA [Counsel for plaintiff]: And to be sure that people don't run around and take advantage of me and you and everybody else in the world, they allow for this punitive-type damage which is punishing that person for his behavior. Whatever you decide, if you do decide some punitive damages should be awarded, make sure that that purpose is served.
 "I don't know if y'all are tennis fans or whatever, but recently at the Wimbledon, John McEnroe went berserk on a court and everybody ranted and raved and he made a fool of himself, and however you look at that. But the folks at Wimbledon assessed him a $1,500.00 fine, I think. Well, I think he won, probably $75,000.00 for being there and one of the coaches for the other player —
 "MR. JACKSON: I am going to object to this line of argument based on the fact that he is referring to the economic side of this case, the financial part of this case, and that is improper argument. And I ask the Court to instruct the jury not to consider that part of his argument.
"COURT: Overrule.
 "MR. SALTER: All right, if I may finish up. One of the fellow coaches for another tennis player made the comment to the news people that, you know, he gets a million dollars worth of publicity and a fifteen hundred dollar fine.
"MR. JACKSON: Now, I object to that. . . .
 "COURT: Ladies and gentlemen, I don't see how that would help us in this case. Go ahead and argue.
 "MR. JACKSON: . . . I now make a motion for the Court to instruct the jury to disregard that line of argument he was talking about.
 "COURT: Ladies and gentlemen, I don't see how that would help us in this case. You heard the argument and I can't take it out of your brain. I can't do that. But I don't see how it could help us in this case.
 "MR. JACKSON: Now, I respectfully ask for a motion for a mistrial based on the argument that has just been made.
"COURT: Overruled."
The rule governing the scope of review on a question dealing with the propriety of an attorney's closing argument was set out in Alabama Farm Bureau Mutual Casualty Ins. Co. v.Humphrey, 54 Ala. App. 343, 348, 308 So.2d 255, 259 (1975):
 "In a case of improper argument where the trial judge overrules objection and fails to instruct the jury as to impropriety with direction to disregard, the test upon *Page 472 
appeal is not that the argument did unlawfully influence the jury, but whether it might have done so."
We note at the outset that plaintiff's counsel did not refer directly to the wealth of Atkins nor did he say that Atkins and McEnroe were within the same income level. A fine imposed by a tennis official on John McEnroe for "going berserk" is a far cry from punitive damages awarded in a court of law by a jury upon deliberation of the evidence.
The instant case is clearly distinguishable from EstisTrucking Co., Inc. v. Hammond, 387 So.2d 768 (Ala. 1980), in which the same test was applied. The judgment was reversed and remanded for a new trial. The statement in that closing argument directly addressed the wealth of the defendant and stated it as a fact. Furthermore, it was found that the trial judge's instructions to the jury to decide the case on the evidence only and not to consider the statements of counsel as evidence were insufficient to eradicate the prejudicial effect.
It was pointed out in Estis Trucking that the trial judge failed to instruct the jury that the statement was improper. We recognize that the trial court in the case at bar also did not use the exact language of the test and instruct the jury that the statement of Drake's attorney was improper. However, he did tell them that the statement was of no use, which is in effect an instruction to disregard it. Whatever harm or prejudice there may have been was eradicated by the judge's admonishment.
The other portion of the closing argument alleged to be prejudicial to Atkins is as follows:
 "MR. SALTER [Counsel for plaintiff]: Now, I want to move on to the big question in this case. What do y'all think about this? Is this the way that you want to be treated? Is there a message that you can send out to Atkins Ford Sales?
 "MR. JACKSON: I object to that. That's not the proper argument in this case. He's referring to individuals and personalities and asking the jury to put themselves in his place and that is not inferred from the evidence. It is not arguing the evidence.
"MR. SALTER: I will argue it — I withdraw it.
"COURT: Rephrase it.
In Estis Trucking, 387 So.2d 768, 774, it was held that a statement that is "merely a bare invitation for the jurors to put themselves in the place of the plaintiff" is not prejudicial. We hold that the above statement is no more than just such an invitation. It is a question to the jury asking whether they would have believed the statements of Atkins's agents about the truck. The last question asked by counsel is simply restating one of the issues — is this a case in which punitive damages are appropriate? This issue was properly before the jury.
We hold that the statements made by plaintiff's counsel during closing argument were not prejudicial and that any harm there might have been was eradicated by the trial court's instructions.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, ALMON, BEATTY and ADAMS, JJ., concur.
EMBRY, J., dissents.
FAULKNER, J., recused.